UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| MIGUEL GONZALES )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HOME NURSERY, INC. & )<br>ANN TOSOVSKY, )<br>)<br>Defendants. ) | Case No. 3:14-cv-01140-MJR-DGW |

**UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Named Plaintiff Miguel Gonzales moves this Court for an Order approving the parties' collective action settlement of claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. A copy of the parties' Settlement Agreement and Release of All Claims ("Settlement Agreement") is attached hereto.

Plaintiff incorporates by reference the following Memorandum in Support.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion and issue an Order:

(a) finding that the Settlement Agreement is fair, reasonable, and adequate;

(b) dismissing the claims of all opt-in Plaintiffs with prejudice; and

(c) granting such further relief as the Court deems equitable and just.

**MEMORANDUM IN SUPPORT**

**Facts and Procedural History**

Defendants have employed all of the opt-in Plaintiffs as shipping and receiving employees at their Albers, Illinois facility during the applicable FLSA recovery period.

Plaintiffs contend that they have been entitled to overtime wages because they have performed non-exempt wholesaling work which has not been separated from their otherwise-exempt agricultural work. Defendants adamantly deny that any of the Plaintiffs are, or have been, entitled to overtime wages and they maintain that the FLSA's "agricultural exemption" has applied to all Plaintiffs throughout the recovery period. Defendants also dispute that the feasibility of separating exempt and non-exempt work.

As this Court previously recognized, the two critical issues, had this case proceeded to trial, were (1) whether or not "it is feasible to separate work done on nonexempt activities from work done on exempt activities" and (2) whether the workers did nonexempt work." Doc. 36, at 5-6. These are fact-intensive inquiries which likely turn on witness credibility. Also, the "feasibility" question would likely depend on dueling testimony by agricultural and / or product warehousing and distribution experts.

On October 22, 2014, Plaintiff Gonzales filed a class and collective action Complaint against Defendants on behalf of himself and others similarly situated shipping and receiving workers at Defendants' Albers, Illinois facility alleging that Defendants violated the FLSA and the Illinois Minimum Wage Law ("IMWL") by misclassifying them as "exempt" from overtime pay laws and thus failing to pay them overtime wages.

After full briefing, the Court granted conditional certification of Plaintiffs' FLSA claim on September 30, 2015. Doc. 36.

Prior to and during the opt-in period, a total of 20 Plaintiffs joined the FLSA claim by filing their respective consent to join forms with the Court.

Plaintiffs did not pursue certification of an IMWL class action claim because Defendants' disclosures showed that there was an insufficient number of shipping and receiving workers during the recovery period to satisfy the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

Defendant disclosed work and pay records for each of the 20 opt-in Plaintiffs. Plaintiffs' counsel entered that data into spreadsheets to calculate a maximum value of recoverable overtime wages of $124,483.65 and an equal amount of liquidated damages under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), which totaled a maximum possible recovery of $248,967.30. Basically, Plaintiffs' counsel determined the value of a half of each Plaintiffs' regular rate of pay for each overtime hour worked according to Defendants' timekeeping records. Thus, the settlement recovered a little more than the midpoint between the $0.00 value of a defense verdict and the maximum recoverable amount calculated by Plaintiffs' counsel.

On January 22, 2016, the parties negotiated through a settlement conference conducted by Magistrate Judge Donald G. Wilkerson. But, they were unable to resolve the claims at that time. Through months of subsequent arms-length negotiations, the parties finally achieved a settlement, which is documented in the attached Settlement Agreement.

The attorneys who negotiated on behalf of the parties are experienced wage and hour litigators and they vigorously represented their clients' respective interests.

In the opinion of Plaintiffs' counsel, the settlement reached in this case constitutes a reasonable compromise of a *bona fide* dispute involving various vigorously contested legal and factual issues.

### Summary of the Proposed Settlement

The key terms of the parties' Settlement Agreement are summarized below. In sum, the parties have agreed to settle the Class members' claims through a settlement fund created by Defendants in the amount of $125,000.00 inclusive of attorneys' fees and costs, a service award, and payroll

taxes on a portion of the award allocated to wage recovery. Notably, each of the 20 Plaintiffs has, or will, personally review and sign the settlement agreement. To date 18 of 20 Plaintiffs have already signed. This procedure was used in lieu of the typical lone signature by a named plaintiff.

The settlement fund will be distributed to Class members in proportion to the amount of unpaid overtime wages calculated for each of them according to Defendants' time and pay records.

Based on his service to the Class in obtaining qualified counsel, initiating this case, informing his co-workers of their right to opt-in to this case, substantially assisting counsel to investigate and prosecute this case, and attending the settlement conference in person on behalf of the entire Class, Plaintiff Gonzalez seeks a modest $2,000.00 service award. Settlement Agreement, ¶ *****.

Dividing the total settlement funds available for distribution by the total number of Class members, after attorney's fees, costs and the service award, reveals that the average recovery per Plaintiff will be $4,026.43, with some receiving less and others receiving much more depending on their respective amounts of overtime worked during the recovery period. While many Class members would have likely sought more than this amount at trial, Plaintiff's counsel believe this is a fair recovery in exchange for the certainty of recovery and the benefit of receiving it now as opposed to potentially years later, or not at all.

Plaintiffs' counsel seek the customary amount of one-third (1/3) of the gross settlement value as fees plus reimbursement of $780.46 in litigation costs.

## Argument and Authorities

### I. Applicable Standard for Approval of FLSA Settlements

The standard for approving an FLSA is that the settlement must be "fair, reasonable, and adequate." *Raymer v. Mollenhauer*, 2011 U.S. Dist. LEXIS 10128, *5 (N.D. Ind. Jan. 31, 2011).

4

Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See, e.g., Prena v. BMO Fin. Corp.,* 2015 U.S. Dist. LEXIS 65474, *1-2 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)"); *Butler v. Am. Cable & Tele., LLC*, 2011 U.S. Dist. LEXIS 74512, *28-29 (N.D. Ill. Jul. 12, 2011) (Rule 23 class members, unlike FLSA opt-in Plaintiffs, must be given notice of the settlement terms and an opportunity to opt-out); *see also, e.g., Nyazee v. Central Mo. Pizza, Inc.,* Case No. 4:14-cv-01699-JAR, Order and Judgment Approving Class Settlement (E.D. Mo. Aug. 14, 2015) (approval issued 4 days after filing of motion to approve).

Based on these principles, Plaintiffs' request that the Court approve the FLSA settlement should be granted.

**II. The Proposed Settlement Enjoys an Initial Presumption of Fairness**

The law favors settlement, particularly in multi-party and complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See, e.g.*, *Armstrong v. Bd. of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement … "[i]n the class action context in particular, 'there is an overriding public interest in favor of settlement.'") (internal citations omitted); *Hispanics United of DuPage County v. Village of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) ("There is little doubt that the law favors settlements, particularly of class action suits.") (quoting *In re Warner Commun's. Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *affd.* 798 F.2d 35 (2d Cir. 1986) (internal citations omitted)); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors

[settlement] agreements, and courts should approach them with a presumption in their favor."); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing policy encouraging settlement of FLSA litigation).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 *Newberg on Class Actions* § 11.41; *see also Great Neck Capital Appreciation Inv. P'ship., LLP v. PriceWaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation."); *Hispanics United*, 988 F. Supp. at 1150 n.6 (same). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In Re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *accord Calobrace v. Am. Nat. Can Co.*, 1997 U.S. Dist. LEXIS 3945, *7 (N.D. Ill. Apr. 1) ("It is not the court's function, in this review, to try the case on the merits and thereby substitute its judgment for the judgment of the litigants as to the optimal terms for settlement of the case.").

### III. Analysis of the Applicable Factors Favors the Settlement

The Seventh Circuit prescribes a five-factor test for preliminary settlement approval. A district court must consider: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs*, 463 F.3d at 652; *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Applying these five factors here supports the approval of this settlement.

### A. Strength of Plaintiff's Case, Balanced Against Amount Offered

This settlement was reached despite the natural and adamant disagreement between the parties about the merits of Plaintiff's case.

Despite the somewhat early resolution, the parties thoroughly calculated possible damages based on Defendants' detailed time and pay records, assessed the best-case and worst-case scenarios, and weighed the likelihood of various potential outcomes. They did so with valuable guidance from Magistrate Judge Wikerson. The parties thus possessed ample information to make an informed assessment of the merits of their respective positions and the likely range of damage awards.

The compensation this settlement delivers to Class members is favorable and provides Class members reasonable consideration for their claims. The maximum value of the claims calculated by Plaintiffs' counsel prior to mediation, and based on extensive disclosures by Defendant, was $248,967.30. The claims settled for $125,000.00, which equates to a little more than half of the maximum possible value. This is a classic compromise, which is fair and reasonable to the entire class.

The settlement delivers Class members meaningful monetary value *now*, not years from now, and provides certainty about the outcome. "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

### B. The Likely Complexity, Length, and Expense of Continued Litigation

This case is complex and carries risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. The parties vigorously dispute whether it is feasible to separate nonexempt work from exempt duties given the dynamics

of Defendants' work setting and its customer demands. The parties also disagree whether the workers in general, especially particular employees, actually performed nonexempt wholesaling work. Thus, the outcome is far from certain and would likely turn on credibility determinations and dueling testimony by agriculture and / or product distribution experts. Although both sides were confident in their ability to prevail, in reality predicting a jury's eventual determination of these issues entails mere speculation. An appeal of any judgment would be likely. In sum, the remaining litigation would be lengthy, time-consuming and expensive. Thus, risks entailed within the claims and defenses dictated that both sides substantially compromise. Accordingly, they did come very close to splitting the difference between the $0.00 value of a defense verdict and Plaintiffs' best-case scenario of a $248,967.30 verdict in their favor.

### C. The Amount of Opposition to the Settlement

Plaintiff's counsel are unaware of any opposition to this settlement. In fact, 18 of the 20 Plaintiffs have already signed the settlement agreement indicating their support and approval.

### D. Opinion of Counsel

The Court is "entitled to rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325. Based on their knowledge of the case and applicable law, as well as their extensive experience in similar FLSA actions, Plaintiffs' counsel believe that the settlement is fair, reasonable, and adequate. It provides substantial benefits to the Class, especially when considering, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

### E. Stage of the Proceeding and Amount of Discovery Completed

As discussed above, this case was in the preliminary stages of discovery. The parties, with an eye towards settlement and limiting litigation costs, conducted informal discovery to value the claims in the hopes of reaching resolution.

### F. Summary of Factors

The parties, armed with substantial background knowledge and experience litigating wage-and-hour and misclassification claims have analyzed the data and interviewed numerous witnesses. Through those interviews, Plaintiffs gained evidence verifying the feasibility of separating exempt and non-exempt work. But, both sides ardently continue to support and believe in their positions. Thus, a compromise at this stage, as opposed to one extended over years with substantial costs and expenses, is beneficial to the Class. Based on all these factors, the Court should find that the proposed settlement is a fair and adequate resolution of Plaintiffs' claims. Plaintiffs therefore request that the Court approve the settlement and dismiss the claims with prejudice.

## IV. Named Plaintiff Gonzales Deserves a Service Award

"Incentive awards for class representatives are common." *Hawkins v. Securitas Sec. Servs. USA*, 280 F.R.D. 388, 395 (N.D. Ill. 2011) (citing *Karraker v. Rent-a-Center, Inc.*, 492 F.3d 896, 899 (7th Cir. 2007)). Such awards provide compensation to the class representative for time spent participating in the prosecution of the case above and beyond that of the absent class members and for subjecting himself to the "slight risk of being made liable for sanctions, costs, or other fees should the suit go dangerously awry." *Id.* (citing *In re Cont'l. Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)). Service awards are routinely granted to plaintiffs who expend efforts and take a leadership role in the litigation. *See, e.g., Butler v. Am. Cable & Tele., LLC*, 2011 WL 4729789, *12 (N.D. Ill. Oct. 6); *In re Ready-Mixed Concrete Antitrust Litig.*, 2011 WL 5547159, *4-5 (S.D.

Ind. Mar. 30) (surveying cases awarding incentives of $3,000 to $25,000 per plaintiff); *Lively v. Dynegy, Inc.*, 2008 WL 4657792, *2 (S.D. Ill. Sept. 30) (awarding $10,000 to each of three plaintiffs); *Morlan v. Univ. Guar. Life Ins.*, 2003 WL 22764868, *2 (S.D. Ill. Nov. 20) (awarding service awards ranging from $5,000 to $25,000).

Named Plaintiff Gonzales, who was responsible for obtaining qualified and experienced counsel, initiating this action, informing opt-in plaintiffs of the existence of this suit and their rights to participate, providing invaluable guidance to Plaintiff's counsel in investigating the claims, drafting the Complaint, understanding and compiling the underlying facts, and negotiating a fair and reasonable resolution on behalf of the entire Class, deserves a modest $2,000.00 service award.

This service award is justified by Mr. Gonzales' efforts and initiative on behalf of others. Certainly, all of the other Class members have substantially benefited from his initiative and his actions. Without his efforts, this settlement would not have been achieved. In light of Mr. Gonzales' efforts, the requested service award is appropriate.

Notably, much larger service awards have repeatedly been approved within this Circuit. *See, e.g., In Re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, at *35-36 (S.D. Ind. Mar. 30, 2010) (surveying cases awarding incentives of $3,000 to $25,000 per plaintiff) *Lively v. Dynegy, Inc.*, 2008 WL 4657792, at *2 (S.D. Ill. Sept. 30) (awarding $10,000 to each of three plaintiffs); *Morlan v. Univ. Guar. Life Ins.*, 2003 WL 22764868, at *2 (S.D. Ill. Nov. 20) (awarding service awards ranging from $5,000 to $25,000).

## Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the Court approve the parties' FLSA collective action settlement, dismiss the claims with prejudice, and grant any other relief the Court deems just and proper.

Respectfully submitted,

**WEINHAUS & POTASHNICK**

/s/ Mark A. Potashnick
Mark A. Potashnick (IL Bar # 6271083)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
Email: markp@wp-attorneys.com

    and
**LIBERMAN, GOLDSTEIN & KARSH**
Eli Karsh, (IL Bar # 6226863)
230 S. Bemiston Ave., Suite 1200
St. Louis, MO 63105
Telephone: (314) 862-3333, ext. 13
Facsimile: (314) 862-0605
Email: elikarsh@aol.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on all attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

    /s Mark Potashnick